**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BRIAN LUCAS, ARONZO DAVIS,** | ) | |
| **and TORRENCE VAUGHANS, on** | ) | |
| **behalf of themselves and similarly** | ) | |
| **situated laborers,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 13 C 1525** |
| **v.** | ) | |
| | ) | **Judge John Z. Lee** |
| **FERRARA CANDY COMPANY,** | ) | |
| **REMEDIAL ENVIRONMENTAL** | ) | **Magistrate Judge Daniel Martin** |
| **MANPOWER, INC., d/b/a REM** | ) | |
| **STAFFING, and LABOR POWER,** | ) | |
| **INC.,** | ) | |
| | ) | |
| **Defendants** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Brian Lucas ("Lucas"), Aronzo Davis ("Davis"), and Torrence Vaughans ("Vaughans") (collectively, "Plaintiffs"), on behalf of themselves and similarly situated laborers, bring this class action against Ferrara Candy Company ("Ferrara"), Remedial Environmental Manpower, Inc. ("REM"), and Labor Power, Inc. ("LP") (collectively, "Defendants"), alleging nine counts of racial discrimination.

Plaintiffs, who are African American, argue that Ferrara, by refusing to hire them, and REM and LP, by refusing to assign them to work at Ferrara, discriminated against them based on their race. Plaintiffs also seek to hold Ferrara vicariously liable for REM and LP's actions,

either as their joint employer or the principal responsible for REM and LP's actions.[1]   Counts I

through III[2] raise claims under the Civil Rights Act of 1866, as amended, codified in 42 U.S.C. §

1981 ("Section 1981").   Counts IV through IX allege violations under the Civil Rights Act of

1964, as amended, codified in 42 U.S.C. § 2000e, *et seq.* ("Title VII").   Specifically, Counts IV

through VI assert claims of disparate treatment, alleging Defendants have intentionally

discriminated against Plaintiffs based on Plaintiffs' race.   Conversely, Counts VII through IX

allege disparate impact, *i.e.*, that Defendants' employment policies and practices have disparately

impacted Plaintiffs based on their race.

     For the reasons discussed below, Defendants' motion to dismiss Plaintiffs' complaint is

denied.[3]   While Plaintiffs' class allegations do contain a facial defect, the Court grants Plaintiffs

leave to amend this defect upon filing their motion for class certification.

## FACTUAL BACKGROUND

     The facts as stated are adopted from Plaintiffs' First Amended Class Action Complaint

and are accepted as true in considering this motion to dismiss. *See Reynolds v. CB Sports Bar,

Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010).   The Court also considers Group Exhibits A–C of

Plaintiffs' response to Defendants' motion to dismiss, which reproduce Plaintiffs' charges of

---

[1]  Plaintiffs name Ferrara as a party under theories of vicarious liability only under Counts II–III and V–VI,
but not Counts VIII–IX.

[2]  The Court notes that only Lucas and Davis, on behalf of themselves and the putative class, and not
Vaughans, bring Counts VI and IX against LP directly (both counts) and Ferrara vicariously (only Count
VI). Insofar as Plaintiffs purport to include Vaughans as a party to Count III, also against LP directly and
Ferrara vicariously, Vaughans's claim is dismissed, because Vaughans never sought work assignments
from LP.   Am. Compl. ¶ 9(d).

[3]  While it appears Defendants' motion seeks to dismiss all counts of the Amended Complaint, Defendants
offer no specific arguments as to why Count I should be dismissed.   In any event, Plaintiffs may proceed
with all counts.

discrimination filed with the Equal Employment Opportunity Commission ("EEOC"). The Court may consider these charges because they include facts consistent with the Amended Complaint. *See Help at Home, Inc. v. Med. Capital, LLC*, 260 F.3d 748, 752–53 (7th Cir. 2001).[4]

Plaintiffs are African American "laborers" who sought work with Ferrara, a candy factory located on Chicago's West Side, beginning in or about November 2011. Am. Compl. ¶¶ 1, 7–9. When Plaintiffs applied directly to Ferrara for work, Ferrara instructed them to instead seek employment through Defendants REM and LP, employment agencies that supply Ferrara and other companies with labor. *Id.* ¶¶ 13–15, 18, 52. Plaintiffs proceeded to seek work at Ferrara through REM, for which they were otherwise qualified. *Id.* ¶¶ 7(b), 8(b), 9(b), 32. REM, however, refused to permit Plaintiffs to attend a Ferrara orientation session that was mandatory for all Ferrara employees. *Id.* ¶¶ 31, 33. Lucas and Davis repeated the same process with LP and were similarly denied any opportunity to work at Ferrara. *Id.* ¶¶ 62, 66. Plaintiffs allege that REM and LP also routinely refuse to permit other African American laborers similarly situated to Plaintiffs to attend orientation to work at Ferrara. *Id.* ¶¶ 34, 59, 67.

Plaintiffs state that the "vast majority" of laborers employed at Ferrara through REM and LP are Latino employees. *Id.* ¶ 16. Many of these Latino employees have no special skills, training, or qualifications. *Id.* ¶¶ 30, 60. REM and LP assign almost no African American laborers to work at Ferrara, despite African American laborers' equal qualifications to work at Ferrara. *Id.* ¶¶ 44, 69. Additionally, while REM and LP do not regularly require Latino

---

[4] Additionally, the Court refers to Plaintiffs' Notices of Right to Sue from the Equal Employment Opportunity Commission ("EEOC"), attached to the Amended Complaint as Group Exhibit A, Exhibits B–D thereto, which consist of supplementary factual declarations, and Plaintiffs' Charges of Discrimination filed with the EEOC, attached to Plaintiffs' Response, which provide additional facts consistent with the allegations in the Amended Complaint. *See* Fed. R. Civ. P. 10; *Help at Home*, 260 F.3d at 752–53.

laborers to undergo pre-assignment background checks, REM and LP regularly require such checks for African American laborers. *Id.* ¶¶ 38–39, 63–64. Finally, REM and LP recruit laborers primarily through Spanish-language media, and REM conducts the Ferrara orientations in Spanish, using Spanish-language materials.[5] *Id.* ¶¶ 27, 37, 53, Ex. B, C. Exhibits B and C to the Amended Complaint provide declarations from two Latino laborers assigned by REM to work at Ferrara, which affirm many of the observations described above.[6] These laborers' declarations also observe that, while working on the first two floors of Ferrara's Forest Park facility, all employees working on the first two floors were Latino assignees from employment agencies, half or more of whom came from REM or LP. *Id.*, Ex. B, ¶¶ 7–9, Ex. C, ¶¶ 7–10.

Plaintiffs allege Ferrara refused to hire Plaintiffs, and REM and LP refused to assign Plaintiffs and similarly situated laborers to work at Ferrara, because they were African American. *See, e.g.*, *id.* ¶¶ 75–76, 84–85, 96 –97. In particular, Plaintiffs assert that, "on information and belief," Ferrara requested REM and LP not assign African American laborers to work at Ferrara, and REM and LP complied with Ferrara's request. *Id.* ¶¶ 48, 72. Alternatively, Plaintiffs assert that Ferrara, REM, and LP acted as joint employers "in the assignment of laborers to work at Ferrara," *id.* ¶¶ 21, 51, or that REM and LP acted as Ferrara's agents in "recruiting, training, assigning, and paying laborers to work at Ferrara." *Id.* ¶¶ 20, 50. On these alternative bases, Plaintiffs allege Ferrara "was aware, or should have been aware," of REM and LP's labor

---

[5] The Amended Complaint does not state whether LP also conducts the orientations in Spanish, using Spanish-language materials.

[6] Defendants attack the declarants' credibility, arguing lack of knowledge. This argument misunderstands the posture of a motion under Rule 12(b)(6), in which a court tests the sufficiency, but not the credibility, of factual assertions. See *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[A] court should assume [the] veracity" of well-pleaded facts.).

assignment practices and "failed to exercise reasonable care" to ensure REM and LP did not discriminate in making labor assignments. *Id.* ¶¶ 45–46, 70–71.

On August 14, 2012, Plaintiffs filed Charges of Discrimination with the EEOC, stating in relevant part that Ferrara, REM, and LP engaged in a "policy and practice of steering qualified African American applicants . . . away" that denied Plaintiffs and similarly situated African American laborers "an equal employment opportunity and resulted in systematic discrimination against African American applicants and segregation of its workforce." Pls.' Resp. Mot. Dismiss, Group Ex. A–C (EEOC Charges) ¶¶ 4, 6. The EEOC issued Notices of Right to Sue to Lucas and Davis on November 29, 2012, and Vaughans on December 7, 2012. *See* Am. Compl., Group Ex. A. On February 27, 2013, Plaintiffs commenced this lawsuit, and on August 29, 2013, filed the Amended Complaint. Defendants now move to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and to strike Plaintiffs' class allegations under Rule 23.

## **LEGAL STANDARD**

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007). Under Rule 8(a)'s notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement" of a claim entitling the pleader to relief, "sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). The complaint must, however, allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires that a complaint include

"factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## DISCUSSION

### I.     Title VII Disparate Impact Claims

Plaintiffs allege that Ferrara's "policy and practice of hiring Latino laborers over African American laborers," and REM and LP's similar practices of hiring laborers and assigning them to Ferrara, have "result[ed] in a significant adverse impact on Plaintiffs and a class of African American laborers." Am. Compl. ¶¶ 129, 135–36, 143–44. Defendants move to dismiss these claims, making three primary arguments. First, Defendants argue Plaintiffs failed to identify facially neutral policies that have disparately impacted African American laborers. Second, Defendants contend that, even if it is unnecessary for Plaintiffs to identify facially neutral policies, Plaintiffs nevertheless did not allege disparate impact in their EEOC charges, and thus have failed to exhaust their administrative remedies. Finally, Defendants maintain that, even if Plaintiffs did allege disparate impact in their EEOC charges, they did not plead facts sufficient to state claims of disparate treatment under *Twombly* and *Iqbal*. The Court rejects these arguments and denies Defendants' motion to dismiss Plaintiffs' Title VII disparate impact claims.

Title VII prohibits failing or refusing to hire an individual, or otherwise discriminating with respect to the terms, conditions, or privileges of an individual's employment, based on the individual's race. 42 U.S.C. § 2000e(a)(1) (2012). This prohibition includes employers' "us[ing] a particular employment practice that causes a disparate impact on the basis of race." *Id.* § 2000e(k)(a)(A)(i). Disparate impact claims differ from disparate treatment claims under

6

Title VII because disparate treatment claims require proof of intentional discrimination. *Adams v. City of Indianapolis*, 742 F.3d 720, 731 (7th Cir. 2014). As the Seventh Circuit has recently made clear in *Adams*, however, disparate impact claims can proceed on the basis of any employment practice, not just practices that are facially neutral. *Id.* at 731–32 (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 990–91 (1988)). Still, disparate impact claims must contain sufficient facts under *Twombly* and *Iqbal* that plausibly demonstrate an employment policy or practice has caused a "relevant and statistically significant disparity" between members of affected classes. *Id.* at 733. "Disparate-impact plaintiffs are permitted to rely on a variety of statistical methods and comparisons to support their claims. At the pleading stage, some basic allegations of this sort will suffice." *Id.*

Plaintiffs allege that Ferrara refused to employ them directly, instead asking them to seek work at Ferrara through REM and LP. Am. Compl. ¶¶ 13–14. Plaintiffs then claim that Ferrara instructed REM and LP to assign only Latino laborers to Ferrara, and REM and LP complied with Ferrara's instruction. *Id.* ¶¶ 48, 72. This arrangement results, according to Plaintiffs, in Latinos comprising the "vast majority" of REM and LP's assignees to Ferrara and "[a]lmost no" African American laborers working at Ferrara. *Id.* ¶¶ 16–17. Plaintiffs corroborate these statements with the declarations of two Latino laborers REM assigned to work at Ferrara. These declarations aver that, on at least two floors of Ferrara's plant in Forest Park, the labor force consists of assignees from employment agencies, half or more of whom are assignees of REM or LP. *Id.*, Ex. B, ¶¶ 7–8, Ex. C, ¶¶ 7–9. Of these assignees, all are Latino, and none are African American. *Id.*, Ex. B, ¶¶ 9–10, Ex. C, ¶¶ 10–11. Thus, Plaintiffs conclude, Ferrara, REM, and LP's practices "result[] in a significant adverse impact" on African

American laborers.   *Id.* ¶¶ 129, 135, 143.

These allegations are sufficient to state a claim of disparate impact under Title VII. Plaintiffs have identified an employment practice—in Ferrara's case, hiring almost exclusively Latino laborers from employment agencies, and in REM and LP's case, assigning only Latino laborers to work at Ferrara—that plausibly has resulted in an adverse impact on Plaintiffs and similarly situated African American laborers, almost none of whom are hired or assigned to work at Ferrara.   While Plaintiffs have not pleaded exact figures that indicate disparate impact, they nevertheless have used an appropriate statistical method—surveying—to generate basic facts that indicate a disparity that Defendants' policies plausibly created.   *See id.* ¶¶ 16–17, Ex. B, ¶¶ 7–10, Ex. C, ¶¶ 7–11 (alleging Defendants' practices have resulted in African American laborers representing nearly 0% of Ferrara's workforce, despite a number of African Americans seeking work at Ferrara).   As the Seventh Circuit held in *Adams*, this is sufficient to survive a motion to dismiss.   743 F.2d at 733.

Defendants' arguments do not alter this Court's conclusion.   First, it does not matter whether Plaintiffs have alleged a facially neutral employment policy or practice.   As the Seventh Circuit explained in *Adams*, "Disparate-impact claims may be based on any employment policy, not just a facially neutral policy."   743 F.2d at 731.   The Seventh Circuit further addressed the "handful of disparate-impact opinions" where courts used the phrase "facially neutral employment practice," observing that those statements were "merely descriptive or illustrative, not prescriptive." *Id.* at 732.   Following *Adams*, Plaintiffs need not allege a facially neutral employment policy or practice to support their disparate impact claims.

Second, Plaintiffs' EEOC charges included allegations of disparate impact, and Plaintiffs

therefore have exhausted their administrative remedies. Plaintiffs' EEOC charges state that Defendants' hiring and assignment policies have "resulted in systematic discrimination against African American applicants," "while less qualified non-African American applicants" have been assigned to work at Ferrara. These allegations are sufficient to encompass claims of disparate treatment and disparate impact.[7] *See Lucas v. Gold Standard Baking, Inc.*, No. 13 C 1524, 2014 WL 518000, at *3 (N.D. Ill. Feb. 10, 2014) (finding identical EEOC charges encompassed claims of disparate treatment and disparate impact); *cf. McQueen v. City of Chi.*, 803 F. Supp. 2d 892, 906 (N.D. Ill. 2011) (finding charge failed to encompass disparate impact claim where plaintiff failed to allege a policy that caused a disparate impact). Third, as explained above, Plaintiffs' Amended Complaint and Exhibits contain facts sufficient to state a claim of disparate impact under *Adams*, *Iqbal*, and *Twombly*.

For these reasons, Defendants' motion to dismiss Plaintiffs' disparate impact claims (Counts VII through IX) is denied.

## II.     Title VII Disparate Treatment Claims

Plaintiffs next allege that Ferrara's hiring practices and REM and LP's assignment practices "result[ed] in disparate treatment of Plaintiffs and a class of African American laborers." More specifically, Plaintiffs allege that REM and LP intentionally discriminated against Plaintiffs by refusing to assign them to work at Ferrara, and should be held directly liable.

As for Ferrara, Plaintiffs assert two bases for their disparate treatment claims. First, Plaintiffs

---

[7] While Defendants correctly point out that Plaintiffs' charges do not include the terms "bias," "disproportionality," or "impact," the charges nevertheless suggest Defendants' policies have systematically favored non-African Americans over African Americans. Plaintiffs' charges are not impenetrably vague; rather, the charges recognizably allege disparate impact. *See Lucas v. Gold Standard Baking Inc.*, No. 13 C 1524, 2014 WL 518000, at *3 (N.D. Ill. Feb. 10, 2014); *cf. Adams*, 742 F.3d at 732 (discussing charges too vague to allege disparate impact).

contend that Ferrara intentionally discriminated against them by instructing REM and LP not to assign Plaintiffs to Ferrara, and should be directly liable, and alternatively, that Ferrara should be held vicariously liable for REM and LP's actions, either as a joint employer with REM and LP, or as REM and LP's principal under an agency theory.    Defendants move to dismiss Plaintiffs' disparate treatment claims on two main grounds: first, Defendants argue that Plaintiffs fail to plead sufficient facts under *Iqbal* and *Twombly* to make out a disparate treatment claim against any of the Defendants; and second, Defendants contend that Plaintiffs fail to state a claim under which Ferrara could be vicariously liable for REM and LP's alleged actions, because Ferrara never employed Plaintiffs.

### A.    Direct Liability of Ferrara, REM, and LP

Disparate treatment claims allege intentional discrimination in the terms, conditions, or privileges of employment based on a protected status under Title VII.    42 U.S.C. § 2000e-2(a)(1) (2006).    Race is a protected status.    *Id.*    Thus, a disparate treatment claim based on race requires proof of intentional, racial discrimination that results in an adverse employment action.    *See id.* § 2000e-2(a), (m); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).    To survive a motion to dismiss under Rule 12(b)(6), however, it is unnecessary to plead facts that prove intent and causation.    *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).    Rather, the Seventh Circuit has explained that a minimal pleading standard should apply to claims of disparate treatment under Title VII.    *See Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632–33 (7th Cir. 2013); *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013); *Davis v. Metro. Pier & Exposition Auth.*, No. 11 C 9018, 2012 WL 2576356, at *7 (N.D. Ill. July 3, 2012).    Specifically, the Seventh Circuit has affirmed that "to prevent

dismissal under Rule 12(b)(6), a complaint alleging [race] discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of [plaintiff's race]."[8]  *Luevano*, 722 F.3d at 1028 (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)).

Plaintiffs' allegations that Ferrara specifically requested that REM and LP "steer African American laborers away" from Ferrara, and that REM and LP complied with this request, plausibly suggest Defendants refused to hire or assign Plaintiffs to work at Ferrara based on their race.  *See* Am. Compl. ¶¶ 48, 72.  Thus, Plaintiffs have stated a plausible claim of disparate treatment under Title VII.  Plaintiffs have also pleaded additional facts that increase the plausibility of disparate treatment, including REM and LP's soliciting laborers primarily in Spanish-language media, offering Ferrara orientations only in Spanish to Latino laborers with qualifications equal or inferior to Plaintiffs, running background checks on African American, but not Latino, laborers, and providing Ferrara with an almost exclusively Latino labor force. *Id.* ¶¶ 27, 30, 37–39, 44, 60, 63–64, 69, Ex. B, ¶¶ 7–9, Ex. C, ¶¶ 7–10.

Defendants bemoan Plaintiffs' pleading facts "on information and belief," particularly in the context of Ferrara's alleged request that REM and LP steer away African American laborers. *See, e.g.*, *id.* ¶ 48.  Defendants contend such pleading is pure speculation.  However, pleading "on information and belief" is permissible "'[w]here pleadings concern matters peculiarly within the knowledge of the defendants.'"  *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) (quoting

---

[8] Defendants rely on *Brown v. JP Morgan Chase Bank*, 334 F. App'x 758 (7th Cir. 2009) to argue that Plaintiffs' disparate treatment claims have not met the plausibility standard of *Iqbal* and *Twombly*.  Not only does *Brown* predate recent Seventh Circuit jurisprudence on pleading requirements for Title VII claims, but it concerns an entirely different cause of action, racial conspiracy under 42 U.S.C. 1985(3), rendering *Brown* inapposite.  *Id.* at 759–60.

*Tankersley v. Albright*, 514 F.2d 956, 964 n.16 (7th Cir. 1975)); *see also SBS Worldwide, Inc. v. Potts*, No. 13 C 6557, 2014 WL 499001, at *6 (N.D. Ill. Feb. 7, 2014) (affirming *Brown* in the wake of *Iqbal* and *Twombly*, and collecting cases applying the *Brown* standard). Here, without discovery, Plaintiffs are very unlikely to uncover facts indicating Ferrara made the alleged request and REM and LP complied with it. Accordingly, in light of the other allegations made in the Amended Complaint, Plaintiffs' pleading "on information and belief" is sufficient to survive Defendants' motion to dismiss.

### B. Vicarious Liability of Ferrara

Plaintiffs allege that, even if Ferrara did not intentionally discriminate against Plaintiffs, Ferrara acted as a joint employer with REM and LP, or as REM and LP's principal in an agency relationship, and thus should be held vicariously liable for REM and LP's refusal to assign Plaintiffs to work at Ferrara.

Courts in the Seventh Circuit have recognized joint employer liability in the Title VII context for cases in which "an individual is employed by a temporary employment agency, but suffers discrimination by the employer to which he or she is assigned, where the employer exerts a significant amount of control over the individual." *Piano v. Ameritech/SBC*, No. 02 C 3237, 2003 WL 260337, at *5 (N.D. Ill. Feb. 5, 2003). Thus, whether a joint employer relationship exists depends on the degree of control employers exert over the same employees. *Id.*; *see also N.L.R.B. v. W. Temp. Servs., Inc.*, 821 F.2d 1258, 1266 (7th Cir. 1987). A plaintiff seeking to hold a defendant liable for discriminatory conduct under a joint employer theory must establish a joint employer relationship, show the defendant knew or should have known of the discrimination, and demonstrate the defendant did not take prompt corrective measures within

the defendant's control.  *Shah v. Littelfuse Inc.,* No. 12 CV 6845, 2013 WL 1828926, at *6 (N.D. Ill. Apr. 29, 2013).

Plaintiffs' agency allegations are similar to their joint employer theory, with the operative question being the extent to which Ferrara exercised control over REM and LP's process of assigning workers to Ferrara.[9]  *See Tamayo*, 526 F.3d at 1088; *Jones v. Man 2 Men USA*, No. 09-cv-4596, 2013 WL 5432819, at *5 (N.D. Ill. Sept. 30, 2013).   However, if an agency relationship is established, it is not clear what standard of knowledge Plaintiffs must prove in order for Ferrara to be liable.  *Compare Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1022 (7th Cir. 1997) (explaining that, in the context of employer liability under Title VII for an agent's harassment, plaintiff must demonstrate employer knew or should have known of agent's harassing activity) *with Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 70–71 (1986) (noting an employer is liable for the discriminatory actions of agents, regardless of whether the employer knew or should have known of the discriminatory action).   Because Plaintiffs' allegations include facts plausibly satisfying either standard, however, the difference is of no consequence.

If Ferrara's request that REM and LP assign only Latino laborers to work at Ferrara was insufficient to establish direct liability under Title VII, it would nevertheless tend to show that Ferrara exercised significant control over REM and LP's assignment process. In turn, it would

---

[9] Defendants correctly point out that assertions of agency relationships and vicarious liability using a negligence-type standard under Title VII typically arise when an employee alleges that workplace harassment has created a hostile work environment and attempts to hold his or her employer liable.  *See Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013) (surveying employer liability for hostile work environment under Title VII).  However, this argument fails to recognize that common law agency principles underpin Title VII as a whole, not just in the context of hostile work environment claims.  *See* 42 U.S.C. § 2000e(b) (defining "employer" to include an employer's agents); *see also Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 754 (1998) ("Congress has directed federal courts to interpret Title VII based on agency principles.").

suggest Ferrara knew, and was complicit in, REM and LP's discriminatory treatment of Plaintiffs and similarly situated African American laborers. The Amended Complaint suggests Ferrara either requested REM and LP not assign Plaintiffs to Ferrara because of their race, or knew REM and LP would not assign Plaintiffs to Ferrara because of their race, and did nothing to stop it. Thus, Plaintiffs have sufficiently pleaded facts that plausibly indicate Ferrara acted as a joint employer with REM and LP, or principal of REM and LP, in the labor assignment process. *See Gold Standard Baking,* 2014 WL 518000, at *4 (finding sufficient allegations of joint employment or agency relationship on identical pleading).

Defendants argue that Ferrara cannot be a joint employer of Plaintiffs, because Ferrara never employed Plaintiffs, and thus cannot have controlled the terms and conditions of Plaintiffs' employment. Essentially, Defendants argue that the requisite level of control to establish a joint employer relationship is lacking. *See, e.g.*, *Shah*, 2013 WL 1828926, at **3–5. While Defendants are correct to focus on the extent of Ferrara's control over Plaintiffs, they incorrectly assume that the requisite control cannot consist of dictating that REM and LP not assign Plaintiffs to work at Ferrara. *See Gold Standard Baking*, 2014 WL 518000 at *3 (citing *Sandoval v. City of Boulder*, 388 F.3d 1312, 1324 (10th Cir. 2004), in which the Tenth Circuit held a joint employer relationship could exist in the context of a Title VII failure to hire claim). It would be odd to extend joint employer liability to discrimination under Title VII once an employment relationship has begun, but refuse to extend liability for discrimination that impermissibly prevents an employment relationship from occurring in the first place, so long as the necessary level of control is present. Thus, while the Seventh Circuit has not addressed directly the issue of joint employer liability in the context of a Title VII failure to assign claim,

14

this Court finds Plaintiffs have stated a plausible claim against Ferrara as a joint employer under Title VII.

For these reasons, Defendants' motion to dismiss Plaintiffs' disparate treatment claims (Counts IV through VI) is denied.

### C.      Section 1981 Failure to Assign Claims against REM and LP

In addition to their Title VII claims, Plaintiffs allege REM and LP discriminated against them in violation of Section 1981.   Defendants argue these claims should be dismissed because they have not been brought within the required statutory time period.

Failure to file a claim within the relevant statute of limitations is an affirmative defense that plaintiffs typically need not anticipate in order to survive a motion to dismiss.   *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).   The only exception to this rule occurs when a complaint sets forth everything necessary to demonstrate the statutory limitation period has passed.   *Id.* (citing *Leavell v. Kieffer*, 189 F.3d 492, 495 (7th Cir.1999)).

Plaintiffs and Defendants dispute whether a four-year limitation period should apply to Plaintiffs' Section 1981 claims against REM and LP, or whether a two-year period should apply instead.   As a preliminary matter, neither period would bar Plaintiffs' Section 1981 actions against REM and LP, as Plaintiffs sought assignment to Ferrara on or about November 2011, and filed this lawsuit on February 27, 2013.   Dkt. 1.   Thus, Defendant's motion to dismiss Plaintiffs' Section 1981 claims is denied.

The real focus of Defendants' objection appears to be the class definition under the Section 1981 claims, which defines the class as "[a]ll African American laborers who sought to

15

be assigned at work at Ferrara through [REM and LP] . . . but were not assigned to work at Ferrara because of their race within the period of four years" prior to filing the lawsuit. Am. Compl. ¶¶ 95, 107. Defendants argue a two-year statute of limitations period should apply in defining the class, relying upon the Seventh Circuit's decision in *Dandy v. United Parcel Service, Inc.*, which states that a two-year period applies to "[Section] 1981 claims which involve the making or enforcement of contracts as opposed to claims centered on [post-formation conduct.]" 388 F.3d 263, 269 n.4 (7th Cir. 2004). Defendants argue that the claims against REM and LP involve the "making or enforcement of contracts," rendering the two-year period applicable. Plaintiffs respond that REM and LP's failure to assign them to work at Ferrara occurred after Plaintiffs agreed to work for REM and LP in some capacity, and thus is "post-formation conduct" to which a four-year limitation period should apply.

The record is insufficient at this stage to enable the Court to evaluate whether the process of signing up with REM or LP to be assigned work constitutes a contractual relationship.[10] Accordingly, the Amended Complaint does not set out everything necessary to make out the affirmative defense that Defendants raise. For this reason, this Court denies Defendants' motion to dismiss Plaintiffs' Section 1981 claims, or the class allegations therein, on the basis of the statutory limitations period.

---

[10] The Court has not been presented with, and has not found in its own research, instances in which any court has considered the question of whether temporary employment agencies' relationship with individuals who merely sign up for work is an "employment contract" under *Dandy*. Furthermore, to consider this issue, the Court would need additional information about the agreements into which REM and LP enter with prospective laborers.

### D. Plaintiffs' Class Allegations

As stated above, Plaintiffs bring their Section 1981 and Title VII disparate treatment claims not only for themselves, but on behalf of a putative class of similarly situated African American laborers. Am. Compl. ¶ 73. Stipulating that Plaintiffs can bring these claims in their own right, Defendants contest Plaintiffs' class definitions. Specifically, Defendants argue that (1) the class definitions are defective; (2) Plaintiffs have not sufficiently pleaded the requirements of Rule 23; and (3) individualized issues will predominate over class-wide issues, making a class action inappropriate.

The Court notes that Plaintiffs have not yet moved to certify the putative class, and that objections to class definitions are usually raised through opposition to a plaintiff's motion to certify a class rather than in a motion to dismiss. *See*, *e.g.*, *Howard v. Renal Life Link, Inc.*, No. 10 C 3225, 2010 WL 4483323, at *2 (N.D. Ill. Nov. 1, 2010) (explaining motion to dismiss is not the proper venue for objecting to class allegation requirements, and collecting cases). Courts have recognized an exception to this rule, however, when a "defendant advances a legal argument based on the pleadings, [and] discovery is not necessary for the court to evaluate whether a class action may be maintained." *Wright v. Family Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010).

Defendants point to what both parties seem to recognize as a defect in Plaintiffs' class allegations. Each class allegation defines the putative class as "[a]ll African Americans . . . not hired or assigned to work at Ferrara because of their race . . . ." *See, e.g.*, Am. Compl. ¶ 83. By defining the class as those African Americans who were discriminated against based on their race, the class definition subsumes the question of liability. The Seventh Circuit has recognized

that such a definition renders it impossible to determine the scope of a class until a finding of liability is made and also creates the possibility that a judgment for the employer would lack preclusive effect. *Bolden v. Walsh Constr. Co.*, 688 F.3d 893, 895 (7th Cir. 2012). The Seventh Circuit further noted, however, that this defect is "reparable." *Id.* (recommending language for amended definition). Other courts in this district have made similar observations. *See*, *e.g.*, *Christian v. Generation Mortgage Co.*, No. 12 C 5336, 2013 WL 2151681, at *2 (N.D. Ill. May 16, 2013); *Franks v. MKM Oil, Inc.*, No. 10 CV 00013, 2012 WL 3903782, at *4 (N.D. Ill. Sept. 7, 2012).

Accordingly, at this stage, it is more prudent to deny Defendants' motion to strike Plaintiffs' class allegations with leave granted to Plaintiffs to amend the class definition to remove the defect upon filing their motion for class certification. The Court will consider Defendants' additional objections to Plaintiffs' class allegations when Defendants oppose Plaintiffs' motion to certify the class. At this stage, without discovery, it is too early for the Court to perform the rigorous scrutiny Rule 23 requires. *See Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011) ("[A] court may abuse its discretion by not allowing for appropriate discovery before deciding whether to certify a class."); *Boatwright v. Walgreen Co.*, No. 10 C 3902, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011); *see also Buonomo v. Optimum Outcomes, Inc.*, 13-CV-5274, 2014 WL 1013841, at *9–10 (N.D. Ill. Mar. 17, 2014). For these reasons, Defendants' motion to dismiss Plaintiffs' class allegations is denied.

## CONCLUSION

For the reasons discussed herein, the Court denies Defendants' Joint Motion to Dismiss Plaintiffs' First Amended Class Action Complaint [79].


**SO ORDERED**                                    **ENTER:**        **7/22/14**

_____
**JOHN Z. LEE**
**United States District Judge**